I was wondering if anybody would pass that trial, if I've been physically present. Thank you, Madam Chief Judge, and may it please the Court. With the Court's permission, I'd like to address grouping and offense level first, and then move to criminal history and the single-sentence rule, and then, if there's any time remaining, address reforming the judgment in aggravated felony. To my first point, Your Honors, grouping. There are multiple bases on which the District Court was required to group the two offenses of conviction in this case. I'd like to start off talking about Subsection D, as in Dog, of 3D1.2, and then move on to A and B. Subsection D, Your Honors, Note 6, and especially Example 1, resolve this case in appellant's favor. According to Note 6, when there are multiple offenses that are governed by different guidelines in Chapter 2, they should be grouped under Subsection D if they are of the, quote, same general type, and if they otherwise meet the criteria for grouping under Subsection D. The application note also provides that same general type should be construed broadly. Are we talking about unlawful reentry and failure to register? Yes, Your Honor. Those are the two offenses of which the defendant was convicted. Don't they serve different societal purposes? They don't in this case, Your Honor, but that is a separate inquiry under Subsections A and B. So I think before the court moves to that, it's somewhat more abstract, I think, and this is why I started off with D, because I think that D is the easy way to resolve this case. Even assuming they served different societal interests, they are of the same general type, and they otherwise meet the criteria for grouping under Subsection D. Under the otherwise meet the criteria, failure to register is explicitly included in Subsection 3D1.2D. So, yes, that one meets the criteria for grouping under Subsection D. As for 2L1.2, the guideline for illegal reentry, that one is not listed as a always is grouped together when there are multiple counts. It's not listed in the never included when there are multiple counts, and so the guideline directs to look to the facts of the individual case. I would submit, Your Honor, that if the defendant had been convicted of two illegal reentry offenses based on the same continuous entry remaining found, two or three or four, if it was the same entry until discovery by law enforcement, assuming that would be consistent with double jeopardy and multiplicity principles, those would all be grouped because it's the same event, the same entry. Both crimes are continuous. So the only question is whether or not they are of the same general type, and the answer to that question is yes, because they are both continuous offenses. Are we – I don't know that – I agree that that's – that it's ongoing or continuous given our case law under – is it just? Your Honor, when you say it, you mean the reentry or the failure to register? I'm just trying to figure out if they're ongoing or continuous, if they're really both ongoing or continuous like you said – you stated. Are they? So in illegal reentry, this court has held yes in all of the cases about found in. Those are in the context of statute of limitations, of venue, as I recall, and also in relation to certain older criminal history point cases. This court has held that the offense is set in motion by the unlawful entry, but the found in prong continues to apply until such time as federal immigration agents know of the defendant's illegal presence or through reasonable diligence could – or provision specifically says that illegal reentry would be – was written to cover ongoing or continuous behavior, or that we treat it that way. What authority do you have for that? Your Honor, the case names escape me right now. I think that – I think the government cited a Compion-Torres case. I can't – I remember the names, but I don't remember where they fall and which buckets. So this court has held, for instance, in the context of statute of limitations. The defendants have argued in the past, you know, I was actually found much earlier and the statute of limitations is run. It's held in the context of venue. For instance, there was a case where, you know, the defendant was injured in a fight in the Western District of Texas and air evac'd by helicopter to the Northern District of Texas, and the court said, well, he hadn't yet been found until he arrived in the Northern District of Texas. The found-in prong specifically— Is this case in your brief? If it's not, I'm not asking you to look. I just was asking if you knew off the top of your head because I'll try to find it. Because I'm concerned that it's not really continuous and that under the Solis case, unless it covers – the guideline covers continuous conduct, if it's not written that way, then it won't be continuous. Do you agree with me that that's an obstacle to this argument? If the illegal reentry is not a continuous, then that's a flaw in this initial thing you started off with? I think not, Your Honor, because 3D1.2D in the text of the guideline says that if it is not listed in either of the ones, then it's based on the specific facts of the case. And that goes back to my original hypothetical example where I guess if there were multiple illegal reentries, multiple entries, then I think I would have a very difficult time, if that's your question, getting the court to say they have to be grouped together because those are discrete offenses, the court would say, and they're terminated each time. If the defendant had been removed, you know, encountered by law enforcement, removed three times, came back another time, and he was prosecuted for all four, that would be different. But in the instance where it is a single entry, a single continuous remaining in the United States until found by law enforcement, that is a continuous offense under this court's precedent in multiple contexts. And that is essentially what we have here, but the relationship is not between multiple illegal reentry counts, but a count of illegal reentry and a count of illegal reentry. Has there ever been a decision that has held what you're asking us to hold? I haven't found one, Your Honor. This is a novel argument you're making, but you think it's logical. I think it's logical, Your Honor, and I think it's compelled by the text of the guideline. Okay. So I will say that it hasn't come up quite so often because often the offense levels in illegal reentry cases and in failure to register cases are so far apart that it doesn't make a difference. If they're counted in separate groups, one of them is often, when they're both prosecuted, one is so much lower that it doesn't affect the units. Counsel, one question I wonder. For it to be a continuing penalty illegal reentry, isn't the offense committed as soon as the entry occurs? Yes, it begins... Continuing doesn't seem to me to be quite the right word. It's my understanding from this court's precedent that the found-in alternative of 1326A is treated as a continuous offense, and it is terminated at the point at which law enforcement discovers the defendant's unlawful presence and could, through the exercise of reasonable diligence, understand. Statute of limitations cases. Statute of limitations, venue, criminal history cases. The government, I know, cited those cases in disputing our point that the offenses would have terminated at the same time... They did terminate at the same time when they were discovered, etc. So I don't think that Muffrin disputes that illegal reentry under the found-in alternative is treated as a continuous offense. I think another example of that might be that you cannot prosecute a defendant multiple times because he was found when immigration agents noticed him in pretrial detention in state, and then they noticed him when he came back to federal court, and they noticed him at sentencing. That is a single and uninterrupted course of conduct, beginning with the entry and terminating at the point where immigration officials either know or, through reasonable diligence, would or should know. That is my understanding of what this circuit precedent is, and I'm happy to... If I didn't cite the cases in the brief, I'm happy to submit just a short letter with just citations and little argument, but I do want to move on to the alternative basis to get to the Chief Judge's question about what about different societal interests. But before moving on completely, this is why I think Example 1 is so good for me, because it says, if the defendant is convicted of theft of mail and theft of Social Security checks from different victims, those should be grouped together. And those would be, I think, under the same guideline, but those are two underlying offenses that are, you know, different... Federal agencies are involved, maybe different titles of the code are involved. You know, one law is to protect the interest in government funds and Social Security. The other is to protect the safety of the mails. It doesn't necessarily require government. So in this hyper-technical sense that the government argues that failure to register and the illegal reentry offense are separate because they're in different codes or different types of law, well, that example says that does not preclude grouping under Subsection D. But I also think it's appropriate to... to combine them under Subsections A or B. Now, the societal interests factor this court has said in unpublished cases is open to a lot of interpretation. It's even open to abuse. In this case, the immigration laws and the sex offender registration laws work hand in hand. They have the same goal, such that you can tell on page 137 of the record, which is paragraph... PSR paragraph 11, when the defendant was arrested by hospital police, he was driving a car, unknowingly driving a car that had been stolen. The police arrested him for that. They put his fingerprint into the automated system, and he was instantly identified. An immigration hold was put on and as someone who was required to register as a sex offender. In this specific case, the interests that society have are no different. Both sets of laws are designed to keep people with this kind of conviction out. And if not out, that they cannot be unmonitored. Their presence, their location cannot be unknown to law enforcement. And so in both cases, what we have is a status offense, and based on that status, someone is required to notify authorities and to make them aware of where they're going, where they will be, etc. And both federal agencies are required to inform the other one. If someone is covered by... If a registered sex offender asks for permission to reapply to the United States, if that were ever to be granted, then the immigration officials would be required to inform the registration authorities. But Mr. Wright, it's very different to have someone be registered as a sex offender so you know where they are and they have the requirements that apply to them than to have someone in the country... I mean, those are not equivalent things, and that would be... You're not certainly suggesting anything of the sort, are you? No, I'm not suggesting that in general those two offenses are the same. I'm saying where someone is inadmissible to the United States because of the same conviction that triggered the obligation to register, that in the specific facts of the case, they are the same. Because as soon as he registers, immigration officials are notified and he'll be removed from the country. That doesn't happen in most cases. I think it would, Your Honor. I think it has to happen. Because he's a sex offender, he's removed? No. You're not saying... Being in the country, illegal re-entry people are not automatically removed from the country right away. People who are here, inappropriate. I mean, we know that. Right. I think that someone who is convicted of an offense like this... You're talking about this sort of offense. The sex offense. So the conviction that makes him registrable also makes him permanently inadmissible and unwaivable. Are we here to talk at all about age differentials or in the plain error of that? Is that not part of this case? Or you're not standing on that today? Your Honor, I'm happy to talk about it in terms of reforming the judgment. I would submit that the definition of sexual abuse of a minor does not include crimes that could be committed by two people who are the same age. Okay, do you recognize that we... That's precluded by the circuit's precedent? That holding from Rodriguez has been reaffirmed in the Escalante case? That we don't have... Holding on age differentials from Rodriguez is still the law of the circuit? And so it would be very hard to find plain error if the most outstanding case law actually says the contrary. So it's not only not... It's plain error, it's not even error. Your Honor, if it is foreclosed by Rodriguez, I don't think that Rodriguez addresses the fact that same age... Rodriguez rejects a four-year age differential, whereas this offense has no age difference. The defendant could be the same age or even younger than the victim, and that's what the TVT case that we cited says. So I don't know that the court has addressed that point specifically. And using the methodology of the Supreme Court in Esquivel-Quintana, I think that, at a minimum, the suspect, the defendant, has to be older than the victim to qualify as generic sexual abuse of a minor. But if the court disagrees with me, we've preserved it, because it's our understanding we have to do that. I say that out of time. Do you have something else, or is that...? Just on the criminal history point in the single-sentence rule, I could address that in rebuttal or just say really briefly that the government cited Note 11 of... Application 11 to 4A1.2, it's our contention that that simply governs when subsection K applies. And I agree that subsection K does not apply of its own force here. We do not believe that has any effect on the 4A1.2A2 single-sentence rule. Thank you. We have your argument on that, and you've saved time for rebuttal. Thank you, Your Honor. Ms. Hayworth? May it please the court, Gail Hayworth on behalf of the United States. And unless the court has an order that you want me to address the issues, then I'll go through the issues as the briefs did. The district court did not err, let alone clearly err, in finding that the defendant's 2011 conviction for Texas aggravated sexual assault of a child under 14 constitutes sexual abuse of a minor, and therefore an aggravated felony under the INA. Now, Vasquez-Alba argues otherwise, contending that it is clear or obvious that there is a minimum age differential between the victim and the perpetrator, but he cites no authority for that proposition. And the Supreme Court case that he relies on, Esquivel-Quintana, actually declined to address the issue, and as this court noted, this court's authority in Rodriguez at least indicated, if not outright held, that there is no such requirement. In Rodriguez, the court rejected the defendant's argument for a four-age differential and held that the definitions of sexual abuse of a minor in legal and other well-accepted dictionaries do not include such an age differential requirement. Notably, the court did not hold that the dictionary definitions support a lesser age differential, and the dictionary definitions that the court relied on and noted in its precedent do not include such an age differential requirement. Further, other panels, including those post-Esquivel-Quintana, have read Rodriguez as holding that the generic offense of sexual abuse of a minor has no minimum age differential requirement. Therefore, having cited no authority to support his position, the defendant clearly cannot show any error, let alone clear or obvious error, in the court's judgment. Now, turning to the issue of grouping, the district court also did not err in declining to group counts 1 and 2 as those counts do not involve substantially the same harm. Section 3D1.2 provides that all counts involving substantially the same harm should be grouped together in one count, and it provides three subsections that show when counts involve substantially the same harm, but none of those subsections apply here. First, counts 1 and 2 do not involve substantially the same harm under subsections A and B because they do not involve the same victim. That is, the societal interests that are harmed by both counts are not closely related. The societal interests harmed by the defendant's illegal reentry offense are the interests protected by enforcing this country's immigration laws, whereas the societal interests harmed by the defendant's failure to register as a sex offender are the society's interests in protecting the public and children from sex offenders. These interests are not closely related, just as immigration offenses are not closely related to drug offenses, firearm offenses, and child sex trafficking offenses, though those offenses may make someone inadmissible. Is there any case that you could cite readily for us for that? There is no case that I have come across that addresses this specific issue about grouping illegal reentry and failure to register as a sex offender. The closest one would be the Hartwell case, where it affirmed the district court's decision not to group an escape account, an escape offense, with the failure to register as a sex offender. In addition to not... Do you mean that ongoing, illegal reentry being an ongoing offense, as your friend on the other side was arguing? Yes, so illegal reentry is an ongoing offense. It starts when, especially when you are found in the United States, it starts at the moment of illegal reentry and then continues until when you are found. So do you think he's correct on the ongoing part of his argument? The offense is a continuous offense. However, he's not correct that that satisfies subsection D for grouping, because it's not enough that the offense is ongoing. It requires that the offense behavior is ongoing or continuous and that the offense guideline is written to cover such continuous behavior. The guidelines here, the illegal reentry guideline, does not cover continuous behavior, and therefore subsection D does not apply. In addition, subsection A's second requirement is not met because the accounts do not involve the same transaction. Subsection B's second requirement is not met because they don't involve one composite harm. They involve distinct harms. And then in addition to subsection D's requirements not being satisfied because, as I've mentioned, the guideline doesn't cover continuous behavior, they are also not of the same general type, despite the defendant's arguments to the contrary. They are very unlike the examples in the guidelines of offenses that are of the same general type, such as check forgery or uttering the forged check or theft of Social Security checks and theft from the mail. And they are much more like offenses that this court has found is not of the same general type, such as conspiracy to carry a firearm during a crime of violence. It is not the same general type as transportation of stolen vehicles, even though those two offenses are united under one conspiracy in Lopez or Vaina. That's what the court held. They are not of the same general type. So in addition to not being of the same general type, they don't satisfy subsection D because neither is written to cover continuous behavior, neither offense is measured by a measure of aggregate harm, and neither is written to include the behavior captured by the other guidelines. So under each of the subsections of the grouping guideline, the offenses are not groupable, they don't involve substantially the same harm, and the defendant can show no error in the district court's judgment. As far as the final, the third issue, the district court did not plainly err in counting the sentences for the defendant's 2008 conviction and his 2011 conviction separately under the guidelines, whereas here there is no intervening arrest. The offenses are counted separately unless they are imposed on the same day. The sentence for the defendant's 2008 conviction and his 2011 conviction were not imposed on the same day. The sentence for the 2008 aggravated assault conviction was originally posed on September 19, 2008, when he pled guilty to aggravated assault causing serious bodily injury and was sentenced to probation of five years. And the sentence for the defendant's 2011 conviction for aggravated sexual assault of a child under 14 was imposed on February 23, 2011, when he pled guilty to that offense and was sentenced to eight years imprisonment. Although the probation sentence imposed in the prior offense was later revoked, and a sentence was imposed on the same day as his later 2011 conviction, the guidelines make clear that in that circumstance the two sentences are to be computed separately. So thus, under the plain language of the guidelines and his commentary, the district court did not err, let alone clearly err in computing those sentences separately. And unless the court has any questions, we ask the court to infirm the district court's judgment. Thank you, Ms. Hayworth. Mr. Wright, you save time for rebuttal. Thank you, Your Honor. My friend cited the cases on footnote 8, page 24 of the government's brief, addresses this court's precedent on treating illegal reentry as a continuous offense. So I'm going to not file the 28J unless the court wants it. No, you don't need to. The case is cited therein. But you did then add why that doesn't really help you. I'm sorry? You then did add why that doesn't really help you. You want to respond to that? I would, Your Honor. So the unpublished out-of-circuit case that the government has cited that states escape and failure to register are not of the same general type. Well, escape, it may be a continuous offense. I can't recall off the top of my head. It may very well be. But there are affirmative acts that are required to commit escape, both in general and in that specific case, that have nothing to do with the failure to register. In that sense, you can commit... That defendant could commit one offense without committing the other. That is not the case here. Here, this defendant could not commit one offense without also committing the other. And the hypotheticals that the government has given in its brief or how we could have done that are essentially precluded by federal law because one entity is required to inform the entity or is required to upload the defendant's fingerprints, which the facts of this case show instantly terminates both offenses because it notifies the relevant authorities of the defendant's presence. So conspiracy to possess a firearm and to transport stolen vehicles, again, the affirmative acts that are required to commit those offenses are separate. Both offenses here are status offenses. They are status... And the defendant acquired the status as a result of the same conviction. And the defendant is required to notify authorities of it. Otherwise, it is status plus presence plus an omission. Now, if that is not enough to make two offenses of the same general type, then I am not sure what the guideline could mean in the application note saying that language is to be construed broadly because it's the exact same acts. Now, the omissions are different, essentially. That seems to be the government's argument. Well, you're supposed to go on the second floor and tell these people, that's not construing the language broadly. They're the same general type because it is unlawful for the person to be present in the United States without the appropriate notifications and permissions. On the criminal history point, I agree that the defendant was sentenced to probation in one of the cases, and that is not on the same day that he was sentenced to prison on the other case. And if those were the only things that happened, I would agree these offenses should count separately. But the text of the guideline says, first of all, if they were separated by an intervening arrest, they count separately. My friend agrees that's not the case here. Both offenses happened before the first arrest on either. So now we're in the other territory. And then there are two criteria in which they do not count separately or they count as a single sentence. One of those is if both counts were in a single charging document. Now, I agree that is not present here, but I would point out that if someone were charged with two counts in a charging document, the government proceeded on count one, he was given probation on count one, and then ultimately violated the terms of the probation, they proceeded on both counts. And so he had a revocation on count one and a sentence on count two the same day. I think it's pretty clear that 4A1.2A2 would require those to be treated as a single sentence. So the question here is, do we acknowledge that he was sentenced twice on the first case? There were two days on which he was sentenced. One day he was sentenced to probation, and another day he was sentenced to prison. We submit that under the plain language, plain text of that statute, that those conditions apply and the courts require to apply grouping. The government, again, relies on note 11, but note 11 has a different purpose. Note 11 is governing when the provisions of subsection K apply. Subsection K says you add the revocation sentence to the original sentence and you use that for purposes of timing out the conviction, use it for purposes of calculating the points, etc. And I agree, subsection K does not permit combining the two, but it's not K that I'm relying on. It's 4A1.2A2. The only thing you need to vote for me is to say he was sentenced on that day and there's no question that he was. If there's no further questions, Your Honor, I thank you. Thank you. We have the arguments in this case and it's submitted. Thank you both.